■ In the Matter of ALEXANDER Z., Alleged to be a Permanently Neglected Child. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; JIMMY Z., Appellant. (Proceeding No. 1.) In the Matter of ENRIQUE Z., Alleged to be a Permanently Neglected Child. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; JIMMY Z., Appellant. (Proceeding No. 2.) [51 NYS3d 231]—

Peters, P.J. Appeal from an order of the Family Court of Albany County (Kushner, J.), entered September 10, 2015, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.

Respondent is the father of the two subject children, Alexander (born in 2011) and Enrique (born in 2013). Both children were born during the pendency of permanent neglect proceedings involving their four older siblings, which ultimately resulted in revocation of a suspended judgment and termination of respondent's parental rights with respect to those children (see Matter of Sequoyah Z. [Melissa Z.], 127 AD3d 1518 [2015], lvs denied 25 NY3d 911, 912 [2015]). Petitioner removed each of the subject children from respondent's care within days following their birth and, shortly thereafter, commenced derivative neglect proceedings against respondent and the children's mother. Following a joint fact-finding hearing, Family Court found the children to be derivatively neglected, which determination was affirmed on appeal (Matter of Alexander Z. [Melissa Z.], 129 AD3d 1160 [2015], lv denied 25 NY3d 914 [2015]).

In June 2013 and April 2014, respectively, petitioner commenced these proceedings seeking adjudications of permanent neglect as to Alexander and Enrique and termination of respondent's parental rights.[1] The petitions alleged that respondent had failed to obtain and maintain safe, stable and appropriate housing, failed to demonstrate an ability to progress toward

---

1. Petitions seeking termination of the mother's parental rights were resolved by judicial surrender of both children in October 2014.

unsupervised visitation and failed to engage in recommended services. After a fact-finding hearing, Family Court adjudicated the children to be permanently neglected. Following a dispositional hearing, the court terminated respondent's parental rights and freed the children for adoption. Respondent appeals.

An agency seeking to terminate parental rights on the ground of permanent neglect must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the children (*see* Social Services Law § 384-b [7] [a]; *Matter of Sheila G.*, 61 NY2d 368, 373 [1984]). "To satisfy this duty, [the agency] must make practical and reasonable efforts to ameliorate the problems preventing reunification and strengthen the family relationship by such means as assisting the parent with visitation, providing information on the child[ren]'s progress and development, and offering counseling and other appropriate educational and therapeutic programs and services" (*Matter of Carter A. [Courtney QQ.]*, 121 AD3d 1217, 1218 [2014] [citations omitted]; *see Matter of Hailey ZZ. [Ricky ZZ.]*, 19 NY3d 422, 429 [2012]). To this end, the agency must offer and encourage participation in appropriate services, but need not show success or progression where the parent elects not to engage in the available services (*see Matter of Sheila G.*, 61 NY2d at 385; *Matter of Angelo AA. [Tashina DD.]*, 123 AD3d 1247, 1248 [2014]).

In support of its threshold burden, petitioner presented the testimony of its senior caseworker who had worked with respondent since 2008. Specifically, the caseworker arranged for respondent's supervised visitation with the children and provided him with free access to public transportation for visitation, medical appointments and job interviews, as well as personal transportation when needed. She further provided respondent with scheduling assistance, including appointment reminders to address his frequently-missed and double-booked appointments, facilitated his enrollment in a parenting class and arranged for third-party service providers to assist him with procurement of employment and housing. An employee of St. Peter's Health Partners testified that she assisted the family in obtaining permanent housing, but when available housing was located, respondent's relationship with the children's mother had deteriorated and the couple decided not to move in together. While continuing its efforts to locate affordable housing for respondent, this service provider assisted his entry into the shelter system. A clinical case manager at Northeast Parent and Child Society testified that she worked with respon-

dent on visitation, grief counseling, housing and employment. Respondent's individual clinical case manager from the same organization testified that he supervised respondent's visitation with the children, worked with respondent and the family to remedy the identified safety concerns and also redirected and coached respondent during visitation.[2] Such efforts were more than sufficient to discharge petitioner's obligation to exercise diligent efforts to encourage and strengthen respondent's relationship with the children (see Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1084 [2015]; Matter of Jyashia RR. [John VV.], 92 AD3d 982, 983-984 [2012]).[3]

Petitioner further proved by clear and convincing evidence that, although able to do so, respondent failed to plan for the future of the children for the requisite time period (see Social Services Law § 384-b [7] [a]). "To substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child[ren]'s initial removal from the home" (Matter of Marcus BB. [Donna AA.], 130 AD3d 1211, 1212 [2015] [citations omitted]). "Good faith alone is not enough: the plan must be realistic and feasible" (Matter of Star Leslie W., 63 NY2d 136, 143 [1984] [citation omitted]).

Respondent's individual clinical case manager testified that, despite the extensive support provided, respondent was unable to progress past supervised visitation because of his lack of stable housing for the children and the ongoing intervention required during the parental visits. Relatedly, several witnesses testified that respondent was difficult to reach either by phone or in person, often failing to inform petitioner of his current shelter or address. In addition, respondent failed to attend medical appointments for the children despite being apprised of such appointments and provided transportation, and often needed to be reminded or redirected during his two-hour parental visits to focus on safe supervision and appropriate topics of conversation. Respondent also failed to engage in

---

2. Respondent's only argument in support of his position that petitioner failed to make the requisite diligent efforts is that petitioner failed to increase his limited visitation with the children. However, his clinical case manager identified a number of safety concerns that would have impeded the progression of such visits. Moreover, there is no record evidence that respondent sought to reinstate his visits with Alexander—which had been suspended since August 2013—nor is there evidence that respondent sought to progress visitation with Enrique beyond the established two-hour weekly visits.

3. We note that petitioner was relieved of its obligation to engage in the requisite diligent efforts as to either child as of January 2014. Nevertheless, petitioner continued to provide housing, employment and family support services to respondent.

required mental health counseling on a regular basis. While there can be little dispute that respondent "lacks advantages and is burdened by [his] limited means," it is equally clear that he has failed to utilize the available resources to take steps toward correcting his employment, housing and mental health difficulties (*Matter of Marissa O. [Grace NN.]*, 119 AD3d 1097, 1099 [2014]). Accordingly, the record amply supports Family Court's conclusion that respondent permanently neglected the children by failing to adequately plan for their future (*see Matter of Jayden XX. [John XX.]*, 127 AD3d 1286, 1287 [2015]; *Matter of Aniya L. [Samantha L.]*, 124 AD3d 1001, 1005 [2015], *lv denied* 25 NY3d 904 [2015]).

Finally, Family Court did not abuse its discretion by terminating respondent's parental rights rather than issuing a. suspended judgment. "Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child[ren] and there is no presumption that any particular disposition, including the return of [the] child[ren] to [the] parent, promotes such interests" (*Matter of Landon U. [Amanda U.]*, 132 AD3d at 1085 [internal quotation marks and citations omitted]; *see* Family Ct Act § 631). The subject children have remained in foster care with the same foster parents for nearly their entire lives, where they reside with one of their older siblings. The evidence adduced at the dispositional hearing established that the children have developed a strong and loving bond with their foster family, who also provide the children with consistent contact with their other siblings. The foster father, who testified at the dispositional hearing, expressed the intention of both he and his wife to adopt the children and their sibling. Respondent's recent progress after years of inaction "was insufficient to warrant any further prolongation of the child[ren]'s unsettled familial status" (*Matter of Kendalle K. [Corin K.]*, 144 AD3d 1670, 1672 [2016]). According appropriate deference to Family Court's factual findings and choice among dispositional alternatives (*see Matter of Aniya L. [Samantha L.]*, 124 AD3d at 1006), we find no basis upon which to disturb its conclusion that a suspended judgment would not be in the children's best interests (*see Matter of Landon U. [Amanda U.]*, 132 AD3d at 1085-1086; *Matter of Joannis P. [Joseph Q.]*, 110 AD3d 1188, 1191-1192 [2013], *lv denied* 22 NY3d 857 [2013]; *Matter of Kellcie NN. [Sarah NN.]*, 85 AD3d 1251, 1252-1253 [2011]).

McCarthy, Garry, Rose and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.